Mathewson Law LLC

Tel: 215.399.9592 | Fax: 215-399-5783

Lisa A. Mathewson
direct dial: 215.398.1642
lam@mathewson-law.com

August 16, 2023

*Via Electronic Filing*

Patricia S. Dodszuweit, Clerk
U.S. Court of Appeals for the Third Circuit
601 Market Street, Room 21400
Philadelphia, PA 19106

> Re: Petition for Rehearing and/or Rehearing En Banc, *United States v. Kousisis and Alpha Painting*, Nos. 19-3679 and 19-3774
>
> Notice of Supplemental Authority Under Fed.R.App.P. 28(j)

Dear Ms. Dodszuweit:

The Court decided *United States v. Porat*, 2023 WL 5009238 (No. 22-1560), on August 7, 2023. *Porat* underscores that *Kousisis* requires rehearing—because its primary basis for affirmance was abrogated by *Ciminelli v. United States*, 598 U.S. 306 (2023), and violates foundational principles *Porat* applies; and because the "premium" theory necessary to align *Kousisis* with *Porat* and *Ciminelli* contradicts the government's charging and trial theory, and its representation to this Court.[1]

*Porat* recognizes that "property fraud" requires deception that targets the victim's "economic calculus"; *i.e.*, addresses a topic "that could materially affect present and future value." *Id.* *6 & n.6 (rankings used to assess degree's "effect on future earnings"); *see id.* *2-*4 (*e.g.*, fraud caused victim to forgo lower-cost education). The "essential benefit" or "nature" of the bargain is its economic value—which corresponds to traditionally recognized property interests. *Id.* *5-*6 & n.6. Harming those interests must be the object of the scheme. *Id.* *4, *13 (concurrence).

Thus, *Porat* confirms that the *Kousisis* Panel erred by holding that any dishonesty that causes the victim to spend money with the defendant

---

[1] Appellants respectfully seek leave to file this Letter of 804 words, assuring the Court that this summary is as economical as possible.

"deprives" the victim of that money. *See* Pet.Reh. at, *e.g.*, 10-18. As the concurrence elucidates, a scheme to win the victim's business dishonestly, but with no effect on price or quality, does not target property interests; it deprives the victim only of its "right to control" its property. *Id.* \*11-\*13.[2]

Therefore, *Ciminelli* abrogates *Kousisis* unless *Kousisis* requires proof that the defendants intended to cause PennDOT to "pay a premium" for DBE involvement, beyond winning the contract dishonestly. *Id.* \*12 & n.6 (alteration omitted). Judge Krause is willing to read *Kousisis* that way (*id.* n.6), but the *Kousisis* Panel says otherwise. *E.g.*, 66 F.4th at 415-17, 418-19, 420-21.

Crucially, neither "premium" nor an analog appears in the record—worse, it is <u>the opposite</u> of the government's theory below. The government told the jury the scheme lowered the defendants' bids artificially—as the sentencing court found. *See* Pet.Reh. at 2, 7, 28 (with quotes and citations). Arguing in *Porat* that *Kousisis* shows property fraud reaches "taking people's money" fraudulently, even at a "lower" cost, the government told the Court the defendants charged PennDOT "less money than an honest contractor would have." Pet.Reh. at 7(citing transcript).

The Court may not affirm on a theory not pursued at trial, even when it was charged and supported with evidence (which this theory was not)[3]—much less on a theory that <u>contradicts</u> the one charged and argued

---

[2] The concurrence also says "misrepresenting one's eligibility to obtain a contract" is property fraud, but its discussion makes clear that does not suffice. *Id.* \*12 (citing *United States v. Ruzicka*, 988 F.3d 997 (8th Cir. 2021) (mispresenting eligibility for <u>discount</u> is property fraud)); *id.* \*13 (approving reversals in *United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014), and *United States v. Starr*, 816 F.2d 94 (2d Cir. 1987)). A "misrepresenting eligibility" rule would criminalize falsely denying, *e.g.*, a conflicting financial interest, contravening binding precedent. *See* Pet.Reh. at 13-17, 19-21.

[3] No evidence supports the "premium" theory. PennDOT did not pay for DBE participation or any costs; it made percentage payments for completed work, up to the contracted lump sum. 3Appx.0914-0915. Contractors may change their DBE participation plan at any time, even during performance. 3Appx.0805; 5Appx.2256-2257. Changing plans may change the amount the contractor spends with DBEs, because "DBE

below.  *Ciminelli*, 143 S.Ct. at 1129; *United States v. Carey*, 72 F.4th 521, 528-29 (3d Cir. 2023).

     Moreover, even if PennDOT had allocated a portion of the contract amount to DBE participation (*but see* n.3), *Porat* shows reversal would still be required.  PennDOT would be in the same position as the *Starr* victims—who earmarked payments for postage the defendants evaded, but got the services they bargained for at the price they expected to pay, with no evidence they would have paid less otherwise.  *Porat*, *supra*, at *11, *13 (discussing *Starr*, 816 F.2d at 99-100).[4]  As the government told the *Kousisis* jury, "PennDOT has paid exactly what it always expected to pay.  It got certified steel, as it was expecting to get.  The bridge will probably last as long as it ever would."  7Appx.3434.  The scheme deprived it only of DBE participation, with no impact on economic value as *Porat* requires.

     With *Porat* confirming that *Ciminelli* abrogates *Kousisis* apart from the "premium" theory, and the "premium" theory contradicting that charged and pursued below, *Porat* heightens the need for rehearing to maintain uniformity with precedent.

                                Sincerely,

                                /s/ Lisa A. Mathewson

                                Lisa A. Mathewson

cc:    Counsel of Record via ECF

---

credits" do not correlate to dollars directly.  49 C.F.R. §26.55(e).  The contractors' costs do not change PennDOT's cost, which was millions less than it would have been here.  *See also* Pet.Reh. at 6-8, 27-29.

[4]    *See* Pet.Reh. at 25, 28-29.